IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEITH SCHMITT and EILEEN SCHMITT,

            Plaintiffs,

    v.

GINA FARRUGGIO, VINCENT HAMMOND,
SHANE VANDERMARK, STEVEN J. MEYERS,
GLENN FORSYTH, HENRY PASQUALINI,
NEWTOWN TOWNSHIP, JULIUS FERRARO,
and ROBERT MATTHEWS,

            Defendants.

CIVIL ACTION
NO. 13-2007

## MEMORANDUM

**SCHMEHL, J.**                                                                 **August 13, 2014**

       Plaintiffs Keith and Eileen Schmitt are embroiled in a dispute with the neighboring household of Defendants Gina Farruggio and Vincent Hammond. Although the neighbors have a variety of problems living near each other, the legal fulcrum of the dispute is a shared access easement. Enforcement actions taken by the local police, who along with the township fill out the roster of Defendants, raised potential constitutional claims. Moving separately, Defendant neighbors (Farruggio and Hammond) and the police and township Defendants (Vandermark, Meyers, Forsyth, Pasqualini, Ferraro, Matthews, and Newtown Township) ask the Court to dismiss all of Plaintiffs' claims. While it may seem unusual for a feud between neighbors to support a federal case, Defendants misapprehend the nature of the case, and Plaintiffs have sufficiently made out their claims at this stage of the litigation; therefore, the Court will deny the Motions to Dismiss as to all counts, though certain grounds for recovery on the equal protection claim will be foreclosed.

Background

Plaintiffs Keith and Eileen Schmitt and Defendants Gina Farruggio and Vincent Hammond own two adjoining lots of four that are accessed by a small private lane, with Defendants further down the lane away from the main road. The lane itself (at least the relevant portion) is on a separate lot, and Defendant neighbors also own the lane lot. A major source of tension is that Plaintiffs put out food to attract a large number of wild animals, particularly geese, and Defendants have sprayed repellent chemicals on their home lot and the lane in response.

The dispute focuses on use of the lane because while Defendant neighbors own it, the lane lot is burdened by an easement in favor of the other properties that use it for access, including Plaintiffs' lot. There is much disagreement as to the rights and restrictions under the easement. Defendant neighbors think Plaintiffs have exceeded their rights by walking the entire length of the lane beyond their property rather than only traversing it from the road to their own driveway, and by maintaining a flower bed that is partially on the easement lot. Plaintiffs think Defendant neighbors have violated the easement's restrictions by: building a "spite fence" on the easement lot, across the lane frontage of Plaintiffs' lot leaving open only the driveway; using the lane as an ATV course, along with the family of their friend Lieutenant Forsyth, one of the police Defendants; allowing access to the lane from properties other than the four lots it is intended to serve, including Forsyth's property; arranging for maintenance of the lane without a vote of the four lots; and, of course, taking action to prevent Plaintiffs from walking the lane and tending the flower bed.

It is that final point—Defendants allegedly taking action to stop Plaintiffs' uses of the lane property—that gives rise to this suit. According to the complaint, in June 2011, Defendant neighbors' sons were riding ATVs on the lane. Plaintiffs complained to the police, and Defendant neighbors had an attorney write a letter to Plaintiffs and the police chief, Defendant Pasqualini, demanding that Plaintiffs stop walking on the lane. Plaintiffs responded with their own letter to the chief. The ATV use and Plaintiffs' related complaints to police and the township continued.

On June 25, 2011, Keith Schmitt walked on the lane in front of Defendant neighbors' house, and Defendant neighbors complained to the police that he was trespassing. In late July, the ATV use and responsive complaints recurred. The police and township officials knew of the easement and the parties' differences with respect to its interpretation, and they had previously responded to Plaintiffs' complaints by stating that they could not intervene in a private property dispute; nevertheless, on August 2, 2011, the police charged Keith Schmitt with harassment and criminal trespass based on his June 25 walk down the lane. Keith Schmitt was convicted at the Magisterial District Judge level but found not guilty at trial *de novo* in the Court of Common Pleas in October 2012. Between the two proceedings, the township issued a letter to Plaintiffs indicating that the property dispute was a civil matter in which the township could not intervene, but the charges were still not dropped.

The present case was filed April 16, 2013. On May 13, 2013, Eileen Schmitt went around to the lane side of the spite fence and began to replace some flowers that had died as a result of the fence construction. Defendant Gina Farruggio happened by in her car, accused Eileen Schmitt of being on her property, and took photos with her phone. Eileen

Schmitt called the police to tell them she was on her own property and to complain of the harassment by Farruggio; the police informed her they could not assist and she should file a civil complaint. Farruggio met with Sergeant Ferraro, showing him a lot map but not the easement information, after which the police cited Eileen Schmitt for criminal trespass and criminal mischief. She was later acquitted by a different MDJ than had heard her husband's case. Finally, Plaintiffs allege that Defendant Hammond, angry about the acquittal and wanting to intimidate Plaintiffs out of using the easement, took a hammer to the flowers while laughing and waving at Plaintiffs.

Plaintiffs amended the complaint in this case to include these subsequent events. Thorough attempts to resolve this matter or at least establish a temporary accord failed, and Defendants filed motions to dismiss.

Discusssion

Plaintiffs' second amended complaint contains eight counts with some subparts and overlapping issues. Plaintiffs label Count I "42 U.S.C. §1983 with *Fuentes-Abbott* Claim First, Fourth & Fourteenth Amendments Misuse of Process Against Keith Schmitt," and Count III is the same with respect to Eileen Schmitt. There are multiple grounds for relief under this heading, but the theory is fairly understandable. Defendant neighbors insisted Plaintiffs not walk farther down the lane than needed for access to their own property or maintain flowers on the easement lot, and they called the police when Plaintiffs persisted; due to friendship between Defendant neighbors and at least one member of the police force, Plaintiffs were eventually charged with trespass. Further, Defendant neighbors built a spite fence along Plaintiffs' property, annoyingly used the

lane as an ATV course for their children, arranged maintenance of the lane without a vote, and allowed direct access to the lane from properties outside the subdivision, all in derogation of Plaintiffs' rights under the various deed provisions and in violation of the law. These actions and the citation of Plaintiffs for trespass deprived them of their property rights in the easement and transferred additional control of the easement to Defendant neighbors. Plaintiffs claim these facts establish a seizure of their property rights in the easement without required due process. Plaintiffs' First Amendment rights were violated because when they complained to the police and township about these events, the officials retaliated by taking action in favor of Defendant neighbors and chilled Plaintiffs' inclination to complain further.

Count II purports to focus on due process, but that issue is inherent to the analysis under Count I. Count II states nothing that was not already stated under Count I, and it is viable for the same reasons. Defendants have not challenged Count II as duplicative, so the Court will not dismiss it on that basis.

Count IV is a *Monell* claim based on tying the same alleged violations to the township itself. Count V is an equal protection claim under §1983 and §1985, alleging that Defendants acted in conspiracy to use police power to intervene in a private easement dispute on behalf of Defendant neighbors while simultaneously and disparately refusing to intervene in the same dispute on behalf of Plaintiffs.

Counts VI, VII, and VIII are state law claims based on the same facts. Defendants do not expressly challenge those counts, apparently believing that they will necessarily be dismissed, at least from federal court, when the federal claims fail. The other claims

survive, however, so the state law claims will survive as well absent specific opposition from Defendants.

*Fuentes/Abbott* Framework

Viewing the case through the appropriate lens reveals that much of the police and township Defendants' attack on Plaintiffs' complaint is beside the point, such as the contention that Plaintiffs have failed to allege seizure and that the citations were supported by probable cause. As Defendants' themselves seem to have recognized by announcing that they could not intervene in a private ownership dispute, this case fits within the framework of *Fuentes v. Shevin*, 407 U.S. 67 (1972) and *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998).

*Fuentes* deemed prejudgment replevin statutes unconstitutional because they provided for law enforcement officials to seize goods from one party on the basis of writs that another party could obtain upon *ex parte* application, with no notice or prior hearing available to the party from whom the goods were seized. 407 U.S. at 73-97. In *Abbott*, the plaintiff had bought a van in his wife's father's name, with an agreement that the plaintiff would get the title after he paid off the loan. 164 F.3d at 144. The plaintiff divorced his wife, kept the van, paid off the loan, and left the title in her father's name to preserve the warranty. *Id.* The ex-wife had her father transfer title to her and then enlisted a constable to aid her in taking possession of the van. *Id.* The plaintiff's attorney and police arrived on the scene as well; the plaintiff and his attorney explained the ownership dispute to no avail, so the attorney used his car to block in the van, and one officer threatened to arrest him and then in fact did so. *Id.* at 145. The Third Circuit applied *Fuentes* in holding that

summary judgment in favor of the constable and officer was improper because (assuming a jury found they used their authority to aid the transfer of possession) it was unconstitutional for them to deprive the plaintiff of his property interest in the van without prior notice and hearing. *Id.* at 145-47. *Abbott* further notes that the police should limit their role to keeping the peace rather than enforcing property rights. *Id.* at 147, 149.

This rule that state actors may not aid one party in a dispute by seizing property without a prior hearing is not limited to chattels or to simple ownership. Recognizing that the plaintiffs in *Fuentes* "lacked full legal title to the replevied goods," 407 U.S. at 86, the Court noted that the constitutional protections at issue cover "'any significant property interest,'" including "the interest in continued possession and use of the goods." *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). This Court has previously applied the *Fuentes/Abbott* framework to cases involving partial interests in real property. *See Gale v. Storti*, 608 F. Supp. 2d 629, 634 (E.D. Pa. 2009) (holding the plaintiff, a restaurant leaseholder, had stated a sufficient Fourteenth Amendment claim under *Abbott* where police officers, after being shown non-court documentation, assisted a landlord in evicting plaintiff in the middle of packing up his belongings); *Gerhart v. Pennsylvania*, CIV.A. 09-CV-1145, 2009 WL 2581715, *4-5 (E.D. Pa. Aug. 13, 2009) (same holding where state troopers evicted a family from their mobile home after the land on which it sat was sold at sheriff's sale). Those decisions also recognize that seizure of property in such circumstances—as opposed to seizure of the person—raises a Fourth Amendment claim even outside the *Fuentes/Abbott* framework. *See Gale*, 608 F. Supp 2d at 633; *Gerhart*, CIV.A. 09-CV-1145, 2009 WL 2581715 at *3-4.

The above framework disposes of several of Defendants' arguments because Plaintiffs are not attacking the trespass citations as seizures of the person unsupported by probable cause; rather, they are attacking the seizure of their property interests in the easement. Citing people for trespass prevents them from making continued use of the property and may constitute a seizure, as the eviction cases recognize. If the extent of their right to the property requires court determination—as it does here where the complex but colorable dispute over the easement rights is analogous to the opposing assertions of van ownership in *Abbott*—such a seizure prior to court proceedings may be a violation of the Fourth and Fourteenth Amendments. The police Defendants could have confined their actions to keeping the peace, for instance citing Plaintiffs (or even Defendant neighbors) only if the conflict became dangerous or involved some kind of disorderly conduct rather than citing for trespass, which is based on and thus enforces the property rights.

<u>Defendant Neighbors Acting Under Color of State Law</u>

*Abbott* also provides some perspective on the Defendant neighbors' argument that they cannot be held liable for constitutional violations because they are not state actors. "Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts "under color of state law" for purposes of § 1983." *Abbott*, 164 F.3d at 147-48 (reversing dismissal of the constitutional claims against the plaintiff's wife because she allegedly enlisted the constable's aid in recovering the van and acted jointly in that recovery); *see also Gale*, 608 F. Supp 2d at 632 (quoting *Abbott* and allowing claims against the

evicting landlord without additional discussion). The United States Supreme Court has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941 (1982). While joint participation may require more than merely invoking officials' aid when there is not a formal, state-created procedure involved in the seizure, *see Spencer v. Steinman*, 968 F. Supp. 1011, 1019 (E.D. Pa. 1997) (quoting *Cruz v. Donnelly*, 727 F.2d 79, 82 (3d Cir. 1984)), *Abbott* and *Gale* show that being present at the scene and relying on the official backup of the true state agents may constitute sufficient joint participation. Allegations that the state and non-state defendants reached an understanding regarding the unconstitutional conduct can also satisfy the "color of state law" requirement. *See Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993). Indications that the private actor had an interest in the outcome of the rights-violating action may support an inference of willful action in concert. *See Wallace v. Powell*, 3:09-CV-286, 2012 WL 2590150 (M.D. Pa. July 3, 2012); *cf. Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195 (3d Cir. 2005) (noting the landlord's *lack* of personal interest in getting a door opened suggested she did *not* have the common purpose or intent necessary for joint action with the state agents, and further noting that the opposite was true in *Abbott*). Even fairly conclusory allegations may entitle plaintiffs to discovery when offered in a context that makes them plausible, such as where a defendant architectural company allegedly "issued . . . default letters 'acting in concert and by agreement, under color of state law, as purported official acts of the Board" of Education. *See D & D Associates, Inc. v. Bd. of Educ. of N. Plainfield*, CIV.A. 03-1026 MLC, 2005 WL 2416967 (D.N.J. Sept. 30, 2005).

Here, as in *Abbott*, the Defendant neighbors had an inherent interest in having the police limit Plaintiffs' use of the easement and lend legitimacy to their own use. Plaintiffs' complaint includes assertions of joint action, such as that "the police defendants . . . in unlawful agreement, conspiracy, and concerted action with the Farruggio/Hammonds and each other . . . exercised police powers to intervene in the civil dispute," and that "[t]he Farruggio/Hammonds and Forsyth enlisted and engaged with the police in joint activity." Those assertions gain plausibility given the alleged friendship between Defendant neighbors and Lieutenant Forsyth, bolstered by the allegations that Forsyth and his family themselves benefitted from enforcing Defendant neighbors' interpretation of the easement. The complaint also alleges that Defendant Farruggio met with Defendant Ferraro to show him a survey map of the properties and that Defendant neighbors took various actions secure in the belief that the police would back them up, such as installing the fence, destroying the flowers, photographing Eileen Schmitt, and threatening prosecution. Altogether, the allegations are sufficient at this stage to maintain the constitutional claims against Defendant neighbors even though they are not formal state agents.

Qualified Immunity

As for the police Defendants' claim of qualified immunity, the Court has already explained why this case fits into the framework of *Fuentes* and *Abbott*. The Third Circuit concluded that *Fuentes* had made the plaintiff's rights clear twenty-four years before *Abbott* (which is itself now over fifteen years old) and that a reasonable officer in the *Abbott* situation would have known he was violating the precedent of *Fuentes*. *Abbott*,

164 F.3d at 148-49. Defendants argue they nonetheless have a special entitlement to qualified immunity because they consulted with the District Attorney as to the propriety of their actions.[1] Third Circuit precedent indeed holds that "encouraging police to seek legal advice serves such a salutary purpose as to constitute a 'thumb on the scale' in favor of qualified immunity." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255 (3d Cir. 2010). Police reliance on a prosecutor's legal opinion creates a presumption of qualified immunity, but the presumption is rebuttable and the reliance must be objectively reasonable. *Id.* at 255-56. Factual issues as to whether a defendant who consulted counsel gave that counsel complete and correct information may preclude an early finding of qualified immunity. *See Behne v. Halstead*, 1:13-CV-0056, 2014 WL 1689950 (M.D. Pa. Apr. 29, 2014) (additionally noting there was evidence to suggest reliance on counsel was pretextual); *see also Ciarlone v. City of Reading*, CIV 09-310, 2011 WL 204747 (E.D. Pa. Jan. 20, 2011), *aff'd*, 489 F. App'x 567 (3d Cir. 2012) ("The advice of the assistant city solicitor creates a presumption the action was reasonable. It is unclear, however, whether the assistant city solicitor was aware the tenants were not notified of the inspection or provided an opportunity to open their doors for the inspector."). Similarly, reliance on counsel was unavailing where the police knew the information they gave the prosecutor was questionable, the prosecutor was already involved in the case and thus not neutral, and the police did not have to make any split-second decisions. *See Spiess v. Pocono Mountain Reg'l Police Dep't*, 3:10CV287, 2013 WL 1249007 (M.D. Pa. Mar. 26, 2013), *appeal dismissed*, (Dec. 19, 2013).

---

[1] Defendants also argue they later relied on statements and actions of the MDJ. It is perhaps worth noting that 1) the citation of Keith Schmitt occurred *before* the MDJ was involved and, as noted further below, 2) the citation of Eileen Schmitt occurred *after* the Court of Common Pleas had disagreed with the MDJ on Keith Schmitt's case.

Here, Plaintiffs have alleged the police and township Defendants expressly acknowledged that the police could not intervene in the dispute between these neighbors because it was a matter for the civil courts. That acknowledgment undermines any argument that the proper role of the police in this case was not clear from the precedent of *Fuentes* and *Abbott*, and it also makes reliance on the prosecutor's opinion questionable. Further, Plaintiffs have alleged that Defendants' consultation with the prosecutor was a pretext to intervene on behalf of the Defendant neighbors and argued that Defendants deliberately withheld some details from the prosecutor. Finally, there seems no great need under the circumstances of this case to protect the police Defendants' leeway in making snap judgments. *See id.*; *see also Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005) (explaining that part of the theory behind qualified immunity is that police officers deserve deference to decisions made very quickly under pressure in the field). Defendants, therefore, are not entitled to additional weight in favor of sovereign immunity merely because they sought the advice of counsel.

First Amendment

Plaintiffs allege Defendants took action against them at least partly in response to their repeated calls and complaints. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Neither side addresses these requirements directly, but the dispute must be understood as

centered on the final element.[2] "A causal connection can be shown by either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. Alternately, the trier of fact can infer causation based on evidence gleaned from the record as a whole." *Arneault v. O'Toole*, 513 F. App'x 195, 198 (3d Cir. 2013) (internal citations and quotations omitted). As Defendants note, the existence of probable cause for a charge undermines the potential for a causal link between protected speech and that charge. *See Losch*, 736 F.2d at 908; *Pomykacz v. Borough of W. Wildwood*, 438 F. Supp. 2d 504, 512 n.13 (D.N.J. 2006) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).

Here, without undertaking a separate probable cause analysis, the Court can conclude that in light of the *Fuentes/Abbott* issues already discussed, Plaintiffs have sufficiently stated a claim that the charges against them were improper and that the police Defendants knew that fact, so Defendants' reliance on the existence of probable cause is ineffective on the First Amendment claims as well. Plaintiffs have otherwise sufficiently pled a causal link through various allegations, including that Keith Schmitt sent multiple complaint emails in one day and was cited a few days later. It may seem more likely that Defendants were motivated by the interests of Defendant neighbors and their relationship with the township and police Defendants and, therefore, that the case should proceed under the Fourth and Fourteenth Amendments (as the township and police Defendants' brief suggests). But at this stage, the Court cannot say a jury could not believe that

---

[2] There appears to be no contention that Plaintiffs' complaints are not protected speech. The retaliatory action here is, at least in part, citation for criminal trespass. Outside the context of these enumerated elements, courts have held that criminal prosecution automatically constitutes a deprivation or a chilling effect. *See Palma v. Atl. Cnty.*, 53 F. Supp. 2d 743, 753 (D.N.J. 1999) (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)). The existence of criminal charges in this case is likely what led the parties to leave out analysis of these elements.

Defendants cited Plaintiffs because they were fed up with the complaints, either in addition to or even instead of the other motivations.

_Monell_

Plaintiffs bring a _Monell_ claim to attribute liability for the alleged wrongs to the township itself. Plaintiffs' allegations that township officials and the police chief announced that they could not get involved in this private dispute seem contrary to the assertion that the township had a policy of wrongfully intervening. But Plaintiffs also include allegations that the township condoned the against-policy conduct and failed to train or restrain the police Defendants. Municipal liability on that basis may exist "if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." _Montgomery v. De Simone_, 159 F.3d 120, 127 (3d Cir. 1998). In an alternate formulation, failure to train can create municipal liability if the plaintiff shows "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." _Gale_, 608 F. Supp. 2d at 635 (quoting _Carter v. City of Philadelphia_, 181 F.3d 339, 357 (3d Cir. 1999)). _Gale_, analogous to this case as previously explained, allowed the claim to go forward on fairly boilerplate _Monell_ allegations. _Id._

Plaintiffs' allegations that they complained to various officials, that the police consulted up the chain of command, and that township officials made statements in response to the situation are adequate to allege contemporaneous knowledge that the police were acting counter to the lawful policy the township proclaimed. Further, the charges against Eileen Schmitt followed obvious awareness of the charges and case against Keith Schmitt, including the outcome of that case. Further, while the township's proclamation of the right policy in some way undermines the *Monell* claim, it also tends to show the township was indeed aware the police would definitely have to address this situation and that any conduct contrary to the expressed policy would violate constitutional rights. The *Monell* claim is, therefore, sufficient at this stage.

Equal Protection

The provisions and court interpretations of 42 U.S.C. §§ 1983 and 1985, under which Plaintiffs bring their equal protection claims, may not accommodate those claims in all respects. As Defendant neighbors argue, §1985(3) is limited to cases involving "racial, or perhaps otherwise class based, invidiously discriminatory animus," *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 802 (3d Cir. 2010) (internal quotations omitted), which Plaintiffs here do not allege. The "class of one" approach, discussed below, is inapplicable to a §1985(3) claim. *See Tomino v. City of Bethlehem*, 08-CV-06018, 2010 WL 1348536, at *17 (E.D. Pa. Mar. 31, 2010). One part of §1985(2) is also unavailable because it likewise requires class-based discrimination. *See Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976).

The other part of §1985(2) derives its federal character not from class discrimination, but from interference with federal court proceedings. *See id.* A claim for intimidating a federal party or witness under §1985(2) requires "(1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs.*" Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 356 (3d Cir. 1986), *aff'd sub nom.*, *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987). Plaintiffs' claim fails with regard to the citation of Keith Schmitt because the present action was not pending at the relevant time, *see id.*; *see also Means v. City of McKeesport*, CIV.A. 11-1092, 2012 WL 6552835 (W.D. Pa. Nov. 19, 2012), *report and recommendation adopted*, 2:11-CV-01092, 2012 WL 6554017 (W.D. Pa. Dec. 14, 2012), but it was pending when Eileen Schmitt was cited. The required allegation of injury could be satisfied by viewing the charges against her as retaliation for participation in this case. *See Shehee v. City of Wilmington*, 67 F. App'x 692, 697 (3d Cir. 2003); *see also Haddle v. Garrison*, 525 U.S. 121, 126 (1998) (holding that injury under §1985(2) need not even be inherently constitutional in nature, and can include interference with at-will employment).

However, there seem to be no allegations that Eileen Schmitt's participation in this case was hindered; Plaintiffs include only extremely general allegations to indicate Defendants' actions were designed to deter Eileen Schmitt from participating in this suit. The language of the complaint suggests that Defendants' actions might at most have been designed to impede or preempt determination of the underlying issues in <u>state</u> court.[3] Eileen Schmitt may be able to demonstrate injury without showing any hindrance to her

---

[3] *See* Second Amended Complaint at ¶¶ 104-06.

participation in this case, but the lack of such hindrance makes it implausible that Defendants sought to intimidate her. Nevertheless, because some discovery has proceeded during the pendency of these motions, this would be the only aspect of the complaint dismissed, and Count V survives on other grounds anyway, it would not make sense to dismiss the §1985(2) witness intimidation claim and give leave to provide more specific allegations; the claim may carry on to be tested on summary judgment or at trial against the facts that may develop.

The "class of one" approach allows suit for violation of equal protection rights under §1983. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233 (3d Cir. 2006). "[A] plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id.* at 239; *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (holding the plaintiff stated a valid class of one equal protection claim where municipality required a larger water service easement on the plaintiff's property than on other similar lots). Defendants here have not yet made a point of articulating any rational basis because they view this case as an attempt to second-guess a decision not to prosecute and argue that the class of one theory does not extend far enough to make such cases viable. Defendants do argue that Plaintiffs have failed to identify similarly situated others who have been treated differently. At this stage, the Court accepts Defendant neighbors themselves as potentially legitimate comparators. Although the precise circumstances of Defendant neighbors' alleged misuse of the easement are not identical to Plaintiffs' alleged trespasses, they are two sets of property owners dealing with the same piece of land, the same deed documents, the same law enforcement officials, and

some very similar alleged violations of the easement terms (e.g., one building a fence and the other remaking a flower bed). Citing Plaintiffs for trespass requires them to put their exercise of their easement rights on hold without requiring the same forbearance of Defendant neighbors despite the similar situations.

Defendants also argue the class of one theory requires class-based discriminatory animus when the issue is selective enforcement; however, viewing the issue as selective enforcement (i.e., plaintiffs demanding that enforcement action be taken against others) again misunderstands the nature of the claims. It is clear from Plaintiffs' complaint and briefs that they very much wanted Defendant neighbors and their friends to be cited for their misuse of the easement. Plaintiffs cannot sue for that in and of itself, but Defendants' brief makes the same mistake as their conduct in that it assumes the easement rights are settled in favor of Defendant neighbors. The rights are not settled, so the claims to varying easement rights by both sides must be considered equally uncertain prior to a court determination. Intervening on behalf of Defendant neighbors while refusing to intervene on behalf of Plaintiffs is differential treatment. The equal protection claim may proceed on a class of one basis under §1983.

Conspiracy

The parties also dispute whether there are sufficient allegations of conspiracy. One focus of the conspiracy arguments is liability under §1985, which regardless of conspiracy allegations is limited as discussed above to a potential intimidation claim under §1985(2). If Plaintiffs can marshal evidence for that claim, it

will have to include evidence of conspiracy; at this stage, the following discussion of the sufficiency of conspiracy allegations in general also covers the §1985(2) claim.

As the police and township Defendants recognize, §1983 allows for conspiracy liability outside §1985's specific conspiracy causes of action if a plaintiff can "show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *See Laurensau v. Romarowics*, 528 F. App'x 136, 140 (3d Cir. 2013) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)).[4] "[A] plaintiff alleging a § 1983 conspiracy must plead with particularity . . . . Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Kuhns v. City of Allentown*, 636 F. Supp. 2d 418, 431 (E.D. Pa. 2009) (internal quotations omitted) (finding the pleading standard met because the plaintiffs alleged that the conspiracy transpired before, during, and after certain lawsuits, that the object was to deprive them of their rights, and that the defendants took several courses of action to block protestors). Conspiracy claims have survived motions to dismiss in some of the cases previously noted as similar to this one. *See, e.g.*, *Gale*, 608 F. Supp. 2d at 634-35; *Gerhart*, 09-CV-1145, 2009 WL 2581715 at *6.

Here, Plaintiffs have identified specific times and time frames during which they allege certain Defendants consulted with one another and agreed to bring charges in knowing violation of Plaintiffs' rights, including but not limited to when "defendants

---

[4] Conspiracy liability will not attach if the defendants merely agree to violate rights but never do so. *See Sweetman v. Borough of Norristown*, 554 F. App'x 86, 90 (3d Cir. 2014). Other parts of this opinion explain that Plaintiffs have successfully alleged violations.

Pasqualini, Forsyth, Meyers and Vandermark, in unlawful agreement, conspiracy and concerted action with the Farruggio/Hammonds . . . exercised police powers . . . charging Keith Schmitt," when several of them discussed the possibility of withdrawing charges between the MDJ and Common Pleas proceedings, and when Farruggio met with Ferraro to show him the survey map. Beyond merely alleging the object of the conspiracy was to violate their rights, Plaintiffs add that Defendants sought to cement Defendant neighbors' unlawful claims to the easement in furtherance of the friendship between Defendant neighbors and Forsyth. The citations of the Schmitts, various meetings among the Defendants, harassment by the Defendant neighbors, and the police and township Defendants' inconsistent refusal to intervene in the dispute all constitute specifically alleged actions to achieve the purpose of the conspiracy. The conspiracy allegations are easily as specific as those in *Kuhns*, *Gale*, and *Gerhart*, and are sufficient at this stage.

<u>Punitive Damages</u>

Both Defendant neighbors and the township and police Defendants argue the complaint's allegations cannot support claims for punitive damages. Punitive damages are available on §1983 claims "when the defendant's conduct is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others,'" and where there is "retaliation, intentional disparate treatment or any other kind of callous, intentional or malicious conduct that would make punitive damages appropriate." *Dee v. Borough of Dunmore*, 474 F. App'x 85, 89 (3d Cir. 2012) (quoting *Alexander v. Riga*, 208 F.3d 419, 430–431 (3d Cir. 2000)). Pennsylvania state law similarly calls for punitive damages when a "defendant has acted in an

outrageous fashion due to either 'the defendant's evil motive or his reckless indifference to the rights of others.'" *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (2005).

As the qualified immunity discussion shows, it may be reasonable to find that Defendants acted contrary to a constitutional mandate that was not only long-established, but that they themselves expressly recognized. Such indifference could rise to the level of reckless or callous, and much of the case concerns allegations of "intentional disparate treatment." *Dee*, 415 F. App'x at 89. Beyond allegations that Defendants knew they were acting wrongly, some of the specific allegations, such as taking a hammer to the flower bed, suggest at least certain Defendants may have acted outrageously or with evil motive. Interestingly, both sets of Defendants argue in part that any punitive damage-worthy conduct that may have occurred is attributable to the other set of Defendants. Given the Court's determination that Plaintiffs have adequately alleged all Defendants were acting in concert, it would be unreasonable to attempt to separate each Defendant's punitive liability at this point.

Personal Involvement

Finally, the police Defendants argue Plaintiffs have not alleged the personal involvement of each officer. While their argument begins with reference to *respondeat superior*, suggesting the issue is that the conduct of one or more of the police Defendants cannot be attributed to the others, they proceed to deny there are sufficient allegations of involvement with respect to *any* police Defendant. The Court is satisfied that the complaint includes at least some specific allegations regarding each police Defendant. For instance: Pasqualini, Forsyth, Meyers, and Vandermark together decided to and did

cite Keith Schmitt for trespass; Meyers and Vandermark consulted with Chief Pasqualini between Keith Schmitt's MDJ hearing and his Common Pleas trial, and they agreed not to drop the charges; Forsyth used the lane himself and lent the authority of his position to Defendant neighbors' wrongful use of the lane; Ferraro met with Farruggio, after which he, Chief Pasqualini, and Matthews cited Eileen Schmitt; and as discussed with regard to conspiracy, the complaint alleges each of these Defendants acted in agreement with each other and Defendant neighbors.

Conclusion

All counts survive the motions to dismiss. In general, the allegations of personal involvement, conspiracy, and punitive damage-worthy conduct are sufficient as discussed. Qualified immunity is inappropriate because the *Fuentes/Abbott* reasoning that underlies the case is well established. Turning to the specific counts, Counts I, II, and III all state valid claims when properly considered in light of the *Fuentes/Abbott* framework. Count II may be redundant but that ground for dismissal was not raised. Count IV states a valid *Monell* claim. Count V, the equal protection claim, survives under §1983 and perhaps one part of §1985(2) (that theory is thinly alleged but dismissal with leave to amend would make little sense as explained above), but other recovery under §1985 is unavailable. Defendants did not specifically attack counts VI, VII, and VIII, the state law claims, believing the federal claims would fail.